In the Matter of the Petition of ALCHE-MEDES/BROOKWOOD, LIMITED PARTNERSHIP, for a New Certificate of Title after Mortgage Foreclosure Sale.

No. C8–95–2034.

Court of Appeals of Minnesota.

April 9, 1996.

Review Denied June 7, 1996.

Kevin J. Dunlevy, Rolf A. Lindberg, Fryberger, Buchanan, Smith & Frederick, P.A., St. Paul, for appellant Alchemedes/Brookwood.

Scott M. Lepak, Jeffrey S. Johnson, William F. Huefner, Barna, Guzy & Steffen, Ltd., Coon Rapids, for respondents Kaluznicks.

Gordon L. Jensen, Jensen and Swanson, Brooklyn Park, for respondent Bell.

Considered and decided by SCHUMACHER, P.J., and PARKER and DAVIES, JJ.

## OPINION

DAVIES, Judge.

Alchemedes/Brookwood, Limited Partnership (Alchemedes), appeals the district court's conclusion that Alchemedes, owner of a Torrens-titled apartment complex, had notice of unrecorded long-term apartment leases. We reverse.

## FACTS

Respondents Beatrice Bell and Walter and Stella Kaluznick (tenants) have for several years been tenants in apartment units under long-term leases. The apartment complex is registered Torrens property. Tenants originally owned their apartments as condominiums but, as part of a condominium-to-apartment conversion in 1985, their units were purchased by Brookwood Estates Limited Partnership (Brookwood).

In exchange for selling their condominiums, Bell and the Kaluznicks received leases with lifetime renewal options; the Kaluznicks' rent was frozen at an amount equaling their mortgage payment, and Bell's rent was set at 75 percent of the posted rent for a similar unit. Their agreements were kept secret pursuant to confidentiality agreements and the leases were not recorded on the certificate of title.

In 1985, Brookwood granted a mortgage on the property to Midwest Federal Savings and Loan Association of Minnesota (Midwest Federal). The mortgage, which was memorialized on the title certificate, was a lien on the entire property and provided:

AND THE SAID MORTGAGOR [Brookwood] for itself, its successors and assigns, does covenant with the Mortgagee [Midwest Federal] * * * that the Premises are free from all encumbrances except as set forth on Exhibit "B" attached hereto; * * *.

One of the exceptions listed in Exhibit B was for "Unrecorded leases," without further identification.

When Midwest Federal went into receivership, the Resolution Trust Corporation (RTC) obtained the mortgage. Alchemedes then purchased the mortgage from RTC. Brookwood then defaulted and Alchemedes foreclosed. After the foreclosure redemption period expired, Alchemedes petitioned to have a new certificate of title issued in its name. The tenants, in turn, sought to have their leases memorialized on the new certificate.

The district court referred the matter to the examiner of titles. Following an evidentiary hearing, a deputy examiner issued a report concluding that Midwest Federal had had actual and constructive notice of the leases. The examiner, therefore, recommended that the leases be recorded, with priority over the foreclosed mortgage. The district court confirmed the examiner's report. This appeal followed.

## ISSUES

I. Did the district court err in concluding that Midwest Federal had actual notice of the unrecorded leases?

II. Did the district court err in concluding that Midwest Federal had constructive notice of the unrecorded leases?

## ANALYSIS

Because the facts in this case are not in dispute, we give no deference to the district court's legal conclusions. *See Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989) (where material facts are not in dispute, reviewing court need not defer to district court's application of law).

## I.

Under the Torrens system, a party holding a certificate of title for property generally holds title free of all encumbrances except those memorialized on the certificate. Minn.Stat. § 508.25 (1994). This is to ensure that, with the few statutory exceptions in Minn.Stat. § 508.25, a person dealing with registered property "need look no further than the certificate of title for any transactions that might affect the land." *Mill City Heating & Air Cond. v. Nelson*, 351 N.W.2d 362, 364–65 (Minn.1984).

The Minnesota Supreme Court has recognized one exception to the Torrens principle in addition to those in Minn.Stat. § 508.25. In *In re Juran*, 178 Minn. 55, 226 N.W. 201 (1929), the court stated that the Torrens act "does not do away with the effect of actual notice * * *." *Id.* at 60, 226 N.W. at 202. Actual notice means actual knowledge. *See Comstock & Davis, Inc. v. G.D.S. & Assocs.*, 481 N.W.2d 82, 85 (Minn.App.1992) (actual notice requires knowledge of enforceable agreement). Both parties agree that in determining whether there was actual notice, we examine the knowledge of Midwest Federal, rather than that of Alchemedes. *See Moore v. Henricksen*, 282 Minn. 509, 519, 165 N.W.2d 209, 217 (1968) (under recording statutes one buying from party without notice is protected even though buyer itself has notice).

This case involves an apartment complex. Midwest Federal, therefore, knew that the property was subject to many leases. Midwest Federal undoubtedly made sure of that reality and even calculated the resulting cash flow. But, contrary to the district court ruling, that information did not provide notice of any *long-term leases* because leases of registered property for three years or more must be noted on the certificate. Minn.Stat. § 508.60 (1994). Thus, the district court erred in its conclusion that Midwest Federal's notice of "[u]nrecorded leases" constituted actual notice of the tenants' long-term leases. Midwest Federal could reasonably

conclude that the leases of which it had actual notice and the leases referenced in Exhibit B were short-term leases.

In addition, the Torrens law provides:

Neither the reference in a registered instrument to an unregistered instrument or interest nor the joinder in a registered instrument by a party or parties with no registered interest shall constitute notice, either actual or constructive, of an unregistered interest.

Minn.Stat. § 508.48 (1994). This provision, in combination with section 508.60, prevents the mortgage's reference to "unrecorded leases" from providing Midwest Federal with actual notice of any lease longer than three years.

Midwest Federal's in-house counsel testified that at the time of the mortgage transaction, "no one knew about leases in excess of three years for this property." He also testified that if he had known of the leases, he "would not have allowed the loan to be closed * * *." The record contains no contradictory evidence suggesting that Midwest Federal had actual knowledge of these specific leases.

## II.

Alchemedes argues that the district court erred in its determination that Midwest Federal had constructive notice of the unrecorded leases because, under *Juran*, the doctrine of constructive notice does not apply to Torrens property. In *Juran*, the court stated that the Torrens act "abrogates the doctrine of constructive notice except as to matters noted on the certificate of title." 178 Minn. at 60, 226 N.W. at 202. Because the leases were not recorded on the certificate, the principle of constructive notice does not apply.

## III.

Our decision that Alchemedes did not have notice of the unrecorded leases makes it unnecessary to address Alchemedes' argument regarding the burden of proof.

## DECISION

Alchemedes did not have actual notice that any lease was for a period beyond three years, neither from the reference to unrecorded leases in the mortgage nor on any other basis. The doctrine of constructive notice does not apply. The leases should not be memorialized on the new certificate.

**Reversed.**