IMPERIAL DEVELOPERS, INC., Plaintiff,

v.

CALHOUN DEVELOPMENT, LLC, Respondent,

Regal Custom Homes, Inc., et al., Defendants,

Lind Homes, Inc., Respondent,

Thompson Plumbing Corp., Respondent,

Great Northern I, Inc., Respondent,

Southview Design & Construction, Inc., Appellant,

BankFirst, Respondent,

and

The Woodshop of Avon, Inc., additional defendant, Respondent,

and

Scherer Bros. Lumber Co., intervening defendant and third party plaintiff, Appellant,

v.

Matthew Lind, et al., Third Party Defendants,

and

Simonson Lumber of Ham Lake, Inc., Third Party Plaintiff,

v.

Contractors Capital Corporation, et al., Third Party Defendants.

No. A08–1883.

Court of Appeals of Minnesota.

Dec. 8, 2009.

Loren E. Gross, Minneapolis, MN, for respondent Imperial Developers, Inc.

Richard A. Glassman, Glassman Law Firm, Minneapolis, MN, for respondent Calhoun Development, LLC.

James T. Hanvik, Bassford & Hanvik, P.A., St. Louis Park, MN, for respondent Thompson Plumbing Corp.

R. Glenn Nord, Lakeville, MN, for respondent Great Northern I, Inc.

Ann O'Reilly, David B. Gates, St. Paul, MN, for appellant Southview Design & Construction, Inc.

Brian M. Sund, Ryan R. Dreyer, Kathleen M. Ghreichi, Morrison Fenske & Sund, P.A., Minnetonka, MN, for respondent BankFirst.

Mark G. McKeon, Willenbring, Dahl, Wocken & Zimmermann, PLLC, Cold Spring, MN, for respondent Woodshop of Avon, Inc.

Thomas M. Zappia, Anne T. Behrendt, Hillwind Office Center, Fridley, MN, for appellant Scherer Bros. Lumber Co.

Considered and decided by SCHELLHAS, Presiding Judge; WORKE, Judge; and ROSS, Judge.

## OPINION

WORKE, Judge.

Appellant-lienholders challenge the district court's grant of summary judgment in favor of respondent-mortgagees, arguing that (1) a mortgage must be both filed with the registrar and memorialized on the certificate of title for the interest to be "of record," and (2) the record does not support the court's determination that appellants had actual notice of respondents' mortgages. We reverse and remand.

## FACTS

In December 2004, respondent Calhoun Development LLC platted a parcel of land within a suburban housing development into eight separate lots. Each lot was issued a certificate of title from the Hennepin County Registrar of Titles (registrar), and all were registered as Torrens properties under the Minnesota Torrens Act (Torrens Act). On June 27, 2005, Calhoun issued a warranty deed to respondent Lind Homes Inc. conveying Lots 3, 4, and 5 of the subdivision. Lind Homes executed a mortgage in the amounts of $2,155,000 to respondent BankFirst and a mortgage in the amount of $243,817.76 to Calhoun. The mortgages were filed with the registrar the following day, which assigned document numbers to both mortgages and time-stamped the filing as occurring on June 28, 2005, at 11:00 a.m. The registrar then issued a new certificate of title memorializing the mortgages for only Lot 5, and the original certificates of titles for Lots 3 and 4 remained titled in the name of Calhoun with no memorial of respondents' mortgages. Lots 3 and 5 were never built on and are not the subject of this dispute.

Lind Homes served as its own general contractor in constructing a luxury home on Lot 4. Lind Homes contracted with appellant Scherer Brothers Lumber Co. for lumber and other construction materials, and Scherer made its first contribution to the property on October 13, 2005. Scherer performed its final work on June 29, 2006, and duly filed a mechanic's lien in the amount of $250,657.34 with the registrar on September 21, 2006. Concurrently, Lind Homes also contracted with appellant Southview Design & Construction Inc. for landscaping services and materials. Southview first performed work on the property on May 17, 2006, completed the landscaping on June 9, 2006, and duly filed a mechanic's lien in the amount of $74,415.53 with the registrar on August 29, 2006.

The registrar re-filed the warranty deed between Calhoun and Lind Homes for Lots 3, 4, and 5 on September 20, 2006, assigning a new document number to the warranty deed despite the fact that the

mortgages were previously filed on June 28, 2005. This time, however, the registrar issued a new joint certificate of title for Lots 3 and 4 only to subsequently cancel both the joint certificate for Lots 3 and 4 as well as the previously issued certificate of title for Lot 5. The registrar ultimately issued a final new certificate of title jointly for Lots 3, 4, and 5 on September 20, 2006. The final certificate memorialized respondents' mortgages, listing the mortgages as having been filed on June 28, 2005, at 11:00 a.m.

Lind Homes eventually defaulted on its mortgages and failed to pay its subcontractors for work performed on Lot 4. One subcontractor, Imperial Developers Inc., consequently initiated a mechanic's-lien-foreclosure action. Southview and Scherer (appellants) filed motions for partial summary judgment seeking a declaratory judgment that their mechanics' liens were superior to the mortgages held by Bank-First and Calhoun (respondents). Respondents moved for partial summary, arguing that their mortgages were superior to the mechanics' liens held by appellants. The district court granted summary judgment in favor of respondents, concluding that the mortgage interests were validly registered under the Torrens Act and, furthermore, that appellants had actual notice of the interests even if the mortgages were not validly registered. The court then adopted a stipulated agreement which incorporated the summary-judgment order. The stipulation verified the amount of attorney fees incurred in the prosecution of the mechanics' liens, as well as the validity and the amount of the liens. This appeal followed.

## ISSUES

I. Did the district court err in granting summary judgment in favor of respondents after concluding that respondents' mortgage interests were of record within the meaning of Minn.Stat. § 514.05, subd. 1?

II. Did the district court err in concluding that appellants had actual notice of respondents mortgages even if the mortgages were not of record within the meaning of Minn.Stat. § 514.05, subd. 1?

## ANALYSIS

When reviewing a grant of summary judgment, this court determines whether there are genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). A motion for summary judgment is appropriately granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to judgment as a matter of law." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993) (citing Minn. R. Civ. P. 56.03). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76–77 (Minn.2002). Whether a genuine issue of material fact exists and whether the district court erred in its application of the law is reviewed de novo. *Id.* at 77. We may affirm summary judgment if it can be sustained on any ground. *Winkler v. Magnuson*, 539 N.W.2d 821, 827 (Minn.App.1995), *review denied* (Minn. Feb. 13, 1996).

■ Generally, an interest in Torrens property is established upon the registration of that interest. *See* Minn.Stat. § 508.47, subd. 1 (2008) ("The act of registration shall be the operative act to convey or affect the land."); *Fingerhut Corp. v. Suburban Nat'l Bank*, 460 N.W.2d 63, 65–66 (Minn.App.1990). There is an exception

to this rule, however, governing priorities of competing interests of mechanic lienholders and mortgagees:

> All liens, as against the owner of the land, shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement, and shall be preferred to any mortgage or other encumbrance not then of record, unless the lienholder had actual notice thereof.

Minn.Stat. § 514.05, subd. 1 (2008). Thus, the mortgages will have priority over the mechanics' liens if either (1) the mortgages were "of record" prior to appellants first furnishing material or labor to the property, or (2) the mortgages were not of record when appellants began working on the property but appellants had actual notice of the mortgages.

## I. Registration of the Mortgages

The first issue therefore is whether the mortgages were of record within the meaning of Minn.Stat. § 514.05, subd. 1. Whether a property interest is considered of record under the Torrens Act is broadly governed by Minn.Stat. § 508.48 (2008). Mortgage interests, however, are directly governed by Minn.Stat. §§ 508.54–.55 (2008). Because sections 508.54 and 508.55 specifically pertain to the registration of mortgage interests, these provisions take precedence over the more general scope of section 508.48. See Minn.Stat. § 645.26, subd. 1 (2008) (specific statute governs over more general statute).

Thus, determining whether the mortgage interests were of record requires us to examine the registration requirements of the governing statute. This presents a question of statutory construction, which is a legal issue reviewed de novo. *Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 122 (Minn.2007). The objective in analyzing statutory construction is "to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2008). If that intent is clear from the plain and unambiguous language of the statute, statutory interpretation "is neither necessary nor permitted" and we will apply the plain meaning of the statute. *Am. Tower, LP v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001).

*Plain Text*

Minn.Stat. § 508.54 provides that mortgages "shall be registered and take effect upon the title only from the time of registration." Minn.Stat. § 508.55, titled "Registration of mortgage; memorial entered on certificate of title," clarifies the registration process:

> The registration of a mortgage ... shall be made in the following manner: The mortgage deed or other instrument to be registered shall be presented to the registrar, and the registrar shall enter upon the certificate of title a memorial of the instrument registered, the exact time of filing, and its file number. The registrar shall also note upon the registered instrument the time of filing and a reference to the volume and page where it is registered.

Appellants assert that two requirements must be fulfilled in order for a mortgage interest to be registered under this statute: first, the document creating the interest must be filed with the registrar; and second, the registrar must memorialize the interest on the certificate of title for the property. Respondents counter, and the district court held, that the practical operation of the registration process is completed when the interest is filed with the registrar, and that the subsequent memorialization of the interest on the certificate of title is a separate event not required for the interest to be validly registered. The key issue is whether section 508.55 re-

quires the interest to be memorialized on the certificate of title, or if memorializing the title is a separate event apart from the registration process.

"When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) (quotation and citation omitted). "Under the basic canons of statutory construction, we are to construe words and phrases according to rules of grammar and according to their most natural and obvious usage." *ILHC of Eagan, LLC v. County of Dakota,* 693 N.W.2d 412, 419 (Minn.2005).

■ Section 508.55 provides that: "[t]he registration of a mortgage ... shall be made in the following manner: [t]he mortgage deed ... shall be presented to the registrar, and the registrar shall enter upon the certificate of title a memorial of the instrument registered, the exact time of filing, and its file number." Applying basic grammar principles, the statute announces the registration requirements using a colon, thereby linking "the mortgage deed ... shall be presented to the registrar" with a conjunctive "and" to "the registrar shall enter upon the certificate of title a memorial" as joint requirements for registration. *See* Minn.Stat. § 508.55. Thus, there are two unambiguous statutory requirements for a mortgage to be registered: the presentation of the legal instrument creating the interest to the registrar, *and* the registrar memorializing the interest on the certificate of title. This plain meaning is not subject to more than one reasonable interpretation, and is therefore unambiguous.

The warranty deed conveying Lots 3, 4, and 5 and the corresponding mortgages were filed with the registrar on June 27, 2005, but the mortgage interests were memorialized only on the certificate of title for Lot 5 at that time. By the plain operation of section 508.55, the failure of the mortgages to be memorialized on the certificate of title for Lot 4 constituted a defective registration, meaning that the mortgage interests of respondents were not of record for the purposes of section 514.05, subd. 1 until they appeared on the final new certificate of title issued on September 20, 2006. Because appellants commenced work on the property on prior to this date, their lien interests attached before respondents' mortgages were of record. Accordingly, a strict and correct interpretation of section 508.55 would result in appellants satisfying the first element of section 514.05, subd. 1 for their mechanics' liens to be superior to respondents' mortgages.

*Caselaw*

Minnesota courts have not directly addressed the registration requirements, but several cases provide useful discussions. The district court primarily relied upon *In re Collier,* 726 N.W.2d 799 (Minn.2007), concluding:

> The Minnesota Supreme Court recently held that "all interests in registered land ... shall be registered by *filing* with the registrar".... The [c]ourt in *In re Collier* noted that the Torrens Act places great emphasis on the acts of filing and registration.... For purposes of Minn. Stat. [§ ] 508.55, a mortgage is "registered" when the registrar denotes on the *mortgage instrument itself* the precise filing date, time and registration number.

(Emphasis added.)

*Collier* involved a title dispute between a mortgagee, M & I Bank FSB, that was assigned the first mortgage on a property

and a subsequent interest purchased by Collier. 726 N.W.2d at 801. M & I foreclosed on the mortgage and initiated a sheriff's sale without having registered its interest in the property with the county registrar. *Id.* Collier saw the published notice of the sale and contacted M & I offering to purchase M & I's interest in the property. *Id.* When M & I declined the offer, Collier conducted a title search and discovered M & I's failure to register its interest in the property. *Id.* Knowing that the property was a Torrens property and that M & I's interest was not validly registered, Collier approached the original mortgagor and purchased the residual interest in the property for $5,000. *Id.* at 802. Collier then sought a declaratory judgment that his interest was superior to the unregistered mortgage held by M & I, and the supreme court focused its analysis on M & I's challenge that Collier was a good-faith purchaser. *Id.* at 803.

Whether the mortgage interest was validly registered was not at issue in *Collier;* both parties agreed that it was not. *Id.* The excerpt cited by the district court and relied upon by the respondents was a discussion, in dicta, regarding the history of the Torrens Act and a brief application of section 508.48 to reiterate that M & I's interest in the property was not validly filed with the registrar of titles. Furthermore, the supreme court quoted Minn. Stat. § 508.49 (2008) in the excerpt cited by the district court, and the district court ignored an ellipses in the supreme court's opinion which greatly affects the overall meaning of the passage: the accurate quotation from *Collier* reads, "All interests in registered land, less than an estate in fee simple, *shall be registered* by filing with the registrar...." *Id.* at 805. The second portion of the statute omitted by the supreme court provides, "the instrument which creates, transfers, or claims the interest, and by brief memorandum or me-

morial of it made and signed by the registrar upon the certificate of title." Minn. Stat. § 508.49 (2008). *Collier* addressed a situation in which the interest at issue was never even filed with the registrar, much less memorialized, hence the omission of the conclusion of the statutory language. *Collier,* 726 N.W.2d at 805. The supreme court thus did not need to address whether a memorial of M & I's interest in the property on the certificate of title was required for the interest to be registered; it was undisputed that the interest was *not* registered. *Id.* at 802. Moreover, the issue addressed by *Collier* is completely different than the registration issue presented here: whether someone with actual knowledge of an unregistered interest can be a good-faith purchaser under the Torrens Act. *Id.* at 803. The district court's reliance on *Collier* was erroneous.

Respondents also rely on this court's decision in *In re Ocwen Fin. Servs. Inc.* to support their contention that an interest does not need to be memorialized on a certificate of title in order to be considered validly registered. 649 N.W.2d 854 (Minn.App.2002), review denied (Minn. Nov. 19, 2002). This case involved two competing mortgagees of a Torrens property who filed their mortgages at the same exact time with the registrar. *Id.* at 856. This court reviewed the district court's conclusion that the mortgage interests were indistinguishable and could not be prioritized. *Id.* We determined that "[t]he registration document numbers are conclusive evidence of the order in which the mortgages were filed and demonstrate that Ocwen's mortgage was registered first." *Id.* at 857. Respondents rely on this quote to support their argument that mortgage interests are effectively registered under section 508.55 when the registrar time-stamps the mortgage document and assigns a document number, as op-

posed to memorializing the interest on the certificate of title. This argument mischaracterizes the issue decided by this court in *Ocwen*. The issue was the priority of two mortgages filed seemingly simultaneously with the registrar; not at which point the interests are considered registered for the sake of the statutory framework. *Id.* at 856. Indeed, both interests were memorialized on the certificate of title in that case, as evidenced by the case arising out of Ocwen's petition subsequent for a new certificate of title following foreclosure under Minn.Stat. § 508.58 (2008). *Id.* This court merely decided whether the district court erred in determining that the contemporaneous filings of the documents with the registrar was too equivocal to properly prioritize the interests.

Appellants primarily rely on a case decided by the U.S. District Court of Minnesota, *U.S. v. Ryan*, to support their contention that a plain reading of the statute is appropriate in this case. 124 F.Supp. 1 (D.Minn.1954). *Ryan* involved the validity of a federal tax lien against a Torrens property that was neither filed with the county registrar nor memorialized on the property's certificate of title. *Id.* at 4, 12. At the outset of its analysis, the court reviewed the history of the Torrens system as well as the adoption of the Torrens Act in Minnesota. *Id.* at 4–5. The court noted that the novelty of the Torrens system was the enablement of "land ownership [to be] conclusively evidenced by certificate and thereby made determinable and transferable quickly, cheaply and safely." *Id.* at 4. This characterization is consistent with the assessment in *Collier*. *See Collier*, 726 N.W.2d at 804 (the evolution of the Torrens system from the abstract system is the culmination of the certificate of title as conclusive evidence of all effective interests in the property).

Regarding the unregistered tax lien, the U.S. District Court declared that solely filing a lien statement with the registrar "would have no value unless the statement was filed with the registrar *and* noted as a memorial on the certificate of title." *Ryan*, 124 F.Supp. at 7 (emphasis added). The court stated that "any other conclusion would render the state statutes dealing with registered property meaningless." *Id.* The court further concluded that a valid property interest under the Torrens Act "must contain a description of the land on which the lien is claimed, and the only method for filing it is by memorializing it on the certificate of title." *Id.* The court ultimately determined that validating a tax lien that "was never at any time filed with the registrar of titles [or] noted as a memorial on the certificate of title[] would completely defeat what has been a permanent rule of property in Minnesota for more than half a century." *Id.* at 12. While this case dealt with a federal tax lien as opposed to the mortgages at issue here, the analysis is instructive to this court. The federal court's requirement that an interest be filed with the county registrar *and* memorialized on the certificate of title in order to be validly registered is the same conclusion produced by the plain reading of the section 508.55.

*Equitable Principles*

A final consideration for the court, raised intermittently by the parties, is the impact of equitable principles upon this particular scenario. Respondents argue that a strict application of section 508.55 requiring a mortgage to be memorialized on the certificate of title in order to be registered betrays equitable principles of justice and good faith by punishing a mortgagee for the mistakes of a county registrar. This argument has merit; prioritizing two mechanics' liens over mortgages in excess of $2 million based on an error of the registrar seems like an extremely

harsh consequence. As the supreme court noted in *Collier*, "[n]othing in the Torrens system indicates that the ancient concepts of equity are not applicable under certain circumstances." 726 N.W.2d at 808 (quotation omitted). Indeed, the court specifically reiterated its precedential authority for applying "principles of equity when a result under the Torrens Act violates notions of justice and good faith." *Id.*

The supreme court has addressed similar concerns presented here in *C.S. McCrossan, Inc. v. Builders Fin. Co. (In re Builders Fin. Co.)*, 304 Minn. 538, 232 N.W.2d 15 (1975). *McCrossan* dealt with a large plat of land with one single certificate of title which was subsequently split into 32 separate lots, each requiring new certificates of title. 304 Minn. at 540, 232 N.W.2d at 17. When issuing the new certificates of title, the registrar failed to memorialize the primary mortgage on seven of the 32 certificates, five of which were challenged in a mechanic's lien foreclosure action. *Id.* The work covered by the mechanic's lien was commenced and completed prior to the owner dividing the original certificate of title into 32 certificates of title, and the mechanic's lien was duly filed prior to the division of the property as well. *Id.* The lienholder sought a declaration that the mechanic's lien was superior to the unregistered mortgages omitted from the newly issued certificates of title, and fully conceded that the mortgage would have remained superior to the lien had no error been made by the registrar or no new certificates issued. *Id.* at 541, 232 N.W.2d at 17. The mortgagee contended that because the mortgage was already properly registered against the property on the original certificate of title prior to any improvement performed by the lienholder, the mortgage remained superior despite the error of the registrar. *Id.* The supreme court held:

We are mindful of the purpose behind Torrens registration, that the certificate, including the memorials thereon, be made conclusive evidence of all matters contained therein. Our holding is therefore of strictly limited application. However, upon the particular facts presented here, we hold that a mortgage properly registered and memorialized under the Torrens Act, the memorials of which the registrar neglected through error to carry forward onto a subsequent certificate of title, retains its priority over the instant mechanic's lien, where said omission occurred subsequent to the furnishing of the first and the last items of labor and materials by the lienholder, who did not rely on the record title in furnishing such labor and materials and who had actual knowledge of a financial interest of the mortgagee prior to the date the omission occurred.

*Id.* at 544, 232 N.W.2d at 18.

*McCrossan* is significant to the equitable considerations presented to this court for two reasons. First, the court's specific reiteration of the importance of the certificate of titles and the memorials of interests thereon under the Torrens system further supports the plain reading of the statute requiring both filing and memorializing an interest for the interest to be registered. *See id.* Second, and more importantly, the supreme court was presented with factual circumstances where the only controversy in the title dispute was an obvious and undisputed error committed by the registrar of titles. *Id.* at 539–40, 232 N.W.2d at 16–17. Instead of issuing a broad rule governing title disputes stemming from a registrar's clerical error, the court carved out a very narrow exception to the general Torrens principle that the face of the certificate of title is the ultimate determinative factor. *Id.* at 544, 232 N.W.2d at 19.

Unfortunately for respondents, this narrow exception is available only to mortgages that were previously memorialized on a certificate of title and the clerical error was made during the reissuance of a subsequent, related certificate of title; not when previously unregistered mortgage interests were memorialized on one certificate of title but not on another due to a clerical error by the registrar. Despite the seemingly trivial distinction between these registrar errors, the supreme court deliberately elected to protect interests jeopardized by one very specific error and not all errors made by registrars. Absent precedent allowing this court to do so, the equitable considerations argued by respondents cannot trump the strict application of the plain language of the registration statutes.

Additionally, the Torrens Act establishes the a general assurance fund for parties aggrieved by a registrar error. Minn.Stat. § 508.76, subd. 1 (2008) provides:

Any person who, without negligence on that person's part, sustains any loss or damage by reason of any omission, mistake or misfeasance of the registrar . . . in the performance of their respective duties under this law . . . may institute an action . . . to recover compensation out of the general fund for such loss or damage.

While we are not asked to determine whether respondents are eligible to recover under the fund, it is noteworthy that the equitable concerns raised by respondents have been anticipated and accounted for by the legislature.

■ Finally, respondents argue that appellants' failure to serve a pre-lien notice on Calhoun invalidated their coordinate mechanics' liens under Minn.Stat. § 514.011, subd. 2(a) (2008) and their interests are therefore unenforceable. Although this issue was discussed by the district court it was not formally argued or decided by the district court, and thus respondents are precluded from arguing this issue on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (issues not presented to the district court may not be argued for the first time on appeal).

We therefore conclude and hold that the plain meaning of section 508.55 requires a mortgage interest to be both filed with the registrar and memorialized on the certificate of title for the interest to be validly registered. Because the respondents' mortgage interests were not memorialized on the certificate of title and thus not of record when appellants' lien interests attached, the district court erred in concluding that the first element of section 514.05, subd. 1 necessary for the mechanics' liens to be superior to the mortgages was not satisfied in this case.

## II. Actual Notice

■ We must also determine whether the mortgages are still superior to the mechanics' liens based on appellants' actual notice of the mortgages. The Torrens Act "does not do away with the effect of actual notice, although it undoubtedly imposes the burden of proving such notice upon the one asserting it." *In re Juran*, 178 Minn. 55, 60, 226 N.W. 201, 202 (1929). As such, respondents were responsible for demonstrating that appellants had actual notice of their mortgages at the time the mechanics' liens attached. The district court held that appellants had actual notice of respondents' mortgage interests in the property.

The supreme court revisited the principle of actual notice in property-interest cases in *Collier*, noting that "since *Juran* was decided in 1929, the law in Minnesota has prevented a prospective purchaser with actual notice of a superior interest in Torrens property from becoming a good

faith purchaser." 726 N.W.2d at 809. We have characterized actual notice as requiring actual knowledge. *See In re Alchemedes/Brookwood, Ltd. P'ship*, 546 N.W.2d 41, 42 (Minn.App.1996), *review denied* (Minn. June 7, 1996). Appellants correctly argue that anything less than actual knowledge constitutes constructive notice or no notice at all. Respondents therefore needed to establish that appellants had actual knowledge of their mortgage interests in order for the unregistered mortgages to be superior to the mechanics' liens.

The district court reasoned that appellants had knowledge of the deficient certificate of title because Calhoun was still listed as the owner:

> The owner listed on the Certificate of Title was a party [appellants] had no relationship with and no knowledge of. [Appellants] had a duty to themselves to inquire as to why the party they were contracting with was not the owner listed on the Certificate of Title if they intended to be able to rely on the Certificate of Title as to the validity of their mechanic's lien and their ability to be paid for their work. [Appellants] ... *had actual knowledge that [the certificate of title] which they now claim to have relied on, was inaccurate.* [Appellants] reliance on [the certificate of title] was not in good faith.

(Emphasis added). The district court did not address whether appellants had actual knowledge of the *mortgages,* focusing instead on whether they had actual knowledge of the inaccuracy in the certificate of title. The district court inadvertently neglected to assess whether appellants had actual knowledge of the mortgages, as required by section 514.05, subd. 1. While the district court addressed the likelihood that appellants were aware of respondents' mortgages, noting specifically that the error on the certificate of title would have raised suspicion as to how Lind Homes could contract for work to be performed on a property when it was not the registered owner, this speculation amounts to constructive notice and is insufficient under *Juran* and its progeny. Accordingly, the issue of whether appellants had actual knowledge and thereby actual notice of respondents' mortgages is remanded for reconsideration.

## DECISION

We conclude Minn.Stat. § 508.55 is the controlling statute as it relates to the registration of mortgages. Furthermore, we conclude that section 508.55 requires mortgage interests to be filed with the office of the registrar and memorialized on the certificate of title to be validly registered. Because respondents' mortgages were not memorialized on the certificate of title when the mechanics first performed work on the property, the mortgages were not of record at the time appellants' mechanics' liens attached to the property under Minn.Stat. § 514.05, subd. 1. We reverse the decision of the district court and remand the question of whether appellants had actual notice of respondents' mortgages.

**Reversed and remanded.**

SCHELLHAS, Judge (concurring in part, dissenting in part).

Because the majority is reversing the district court's grant of summary judgment to respondents, I concur with its conclusion that the issue of whether appellants had actual notice of respondents' mortgages should be remanded to the district court. But I respectfully dissent from the majority's reversal of the district court's grant of summary judgment to respondents. I disagree that the district court erred in its determination that re-

spondents' mortgages are prior and superior to appellants' mechanics' liens.

Minnesota law provides that a mechanic's lien attaches to land at the time that the first item of material or labor is contributed and has priority over any encumbrance not "of record" at that time, unless the mechanic's lienholder has actual notice of the encumbrance. Minn.Stat. § 514.05, subd. 1 (2008). Here, the Hennepin County Office of the Registrar of Titles accepted Lind Homes' warranty deed to Lot 4 and respondents' mortgages for registration and assigned document numbers to them at 11:00 a.m., on June 28, 2005. For reasons not in the record, the registrar did not issue a new certificate of title to Lot 4, certifying Lind Homes as the fee owner, and did not enter memorials of the mortgages on the existing certificate of title to Lot 4.

Scherer and Southview contributed their first items of material or labor to Lot 4 on October 13, 2005 and May 17, 2006, well after respondents filed their mortgages with the registrar but before memorials of the mortgages were entered on the certificate of title. Thus, as the majority notes, the issue here is whether the mortgages were "of record," under Minn.Stat. § 514.05, subd. 1, at the time they were filed with the registrar.

As the majority notes, an interest in Torrens property is established upon the registration of that interest, Minn.Stat. § 508.47, subd. 1 (2008), and mortgages take effect upon the title to registered land only from the time of registration, Minn. Stat. § 508.54 (2008). Minnesota Statutes, section 508.55 (2008), provides that registration "shall be made in the following manner: The mortgage deed or other instrument to be registered shall be presented to the registrar, and the registrar shall enter upon the certificate of title a memorial of the instrument registered, the exact time of filing, and its file number." The majority holds that respondents' mortgages were not "of record" at the time that appellants contributed their first items of material or labor to the land, based on its conclusion that the mortgages were not registered under Minn.Stat. § 508.55, until they were memorialized on the certificate of title. I disagree that respondents' mortgages were not "of record" under Minn.Stat. § 514.05, subd. 1, when appellants contributed their first items of material or labor to Lot 4.

I would conclude that interests in registered land are "of record" under Minn. Stat. § 514.05, subd. 1, at the time they are filed, even before they are memorialized on the certificate of title. Mortgagees or other interest-holders have no control over the timing of entry of memorials of their interests on the certificate of title. In this case, an extraordinary delay occurred between the time the mortgages were filed with the registrar and the time their memorials were entered on the certificate of title. But even under ordinary circumstances, the registrar does not simultaneously file-stamp a mortgage, assign a document number to it, *and* enter a memorial of the mortgage on a certificate of title. In the ordinary course of business in the office of the registrar, a time gap necessarily occurs between the date of filing and entry of a memorial on a certificate of title. The length of this gap varies from week to week and among counties. Registrars have no control over the number of documents presented to them for registration and also must contend with normal work-production issues. And no party in this case has suggested that respondents somehow controlled the timing of the entry of the memorials of their mortgages on the certificate of title to Lot 4.

The majority's holding presents an unworkable rule under which construction lenders must wait for proof that their mortgages have been memorialized on certificates of title—which may take days or weeks—before disbursing any mortgage funds for fear of risking the loss of priority to mechanics' lienholders who commence work after the mortgages have been filed with the registrar but before they are memorialized. To wait to disburse mortgage funds until a mortgage is memorialized on a certificate of title has not been the practice of construction lenders, who disburse funds as soon as they can verify that no visible work was done on the building site before the mortgage was filed. *See* 6A Stephen J. Kirsch, *Minnesota Practice* § 48.3.9 (3d ed. 1990) (describing steps construction lenders should take prior to disbursing funds).

Additionally, if mortgages or other interests in registered land are deemed not to be "of record" under Minn.Stat. § 514.05, subd. 1, until memorialized on a certificate of title, the resolution of priority disputes will depend on the availability of information regarding the exact date and time that instruments are memorialized on a certificate. But the registrar makes no record of the date and time of memorialization on a certificate of title. Instead, the registrar makes a record of the date and time that an instrument is filed. As in this case, certificates of title contain a column with the heading:

"Date of Registration
Month Day, Year Time."

For each mortgage deed or other instrument to be registered, after presentation to the registrar for filing, "the registrar shall enter upon the certificate of title a memorial of the instrument registered, the exact time of filing, and its file number. The registrar shall also note upon the registered instrument the time of filing and a reference to the volume and page where it is registered." Minn.Stat. § 508.55. The statute *does not* require the registrar to note upon the certificate or elsewhere the date or time of memorialization, and the registrar does not do so. The "Date of Registration," set forth under the above-referenced column heading, reflects the month, day, year and time that the instrument is filed with the registrar.

I would conclude therefore that the priority of competing interests in registered land is determined by the date of filing with the registrar, not the date on which an instrument is memorialized on a certificate of title. This position is supported by case law. *See In re Ocwen Fin. Servs., Inc.*, 649 N.W.2d 854, 857 (Minn.App.2002) (holding that the registration numbers are conclusive evidence of the order in which the mortgages were filed, and granting priority to the interest with the lower registration number).

I would hold that respondents' mortgages were of record at the time that appellants furnished their first item of labor or materials to Lot 4, and I would affirm the district court.